UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
_____X

**F.K. and P.K.**, individually, and on behalf of their child, A.K., a minor,

Plaintiffs,

-against-

**Levittown Union Free School District,**
Defendant.
_____X

Case No. 2:25-cv-1495

COMPLAINT FOR ADMINISTRATIVE REVIEW OF ERRONEOUS DECISIONS BY THE STATE REVIEW OFFICER

Individuals with Disabilities Education Act; N.Y. Educ. Law §4401 *et seq*.

F.K. and P.K. (Parents), individually, and on behalf of their minor child, A.K., allege the following violations of their educational rights by Levittown Union Free School District (Defendant or District):

## PARTIES

1. A.K. is a 14-year-old child with a disability as defined by the Individuals with Disabilities Education Act (IDEA). 20 U.S.C. § 1400, *et seq*.

2. F.K. and P.K. are A.K.'s parents. They have resided at all relevant times within the geographical area served by the District.

3. The District is the Local Educational Agency (LEA) responsible for providing A.K. a Free Appropriate Public Education (FAPE) under the IDEA and New York's education laws and administrative code.

4. The District's administrative offices are located at 150 Abbey Lane, Levittown, NY 11756.

## JURISDICTION AND VENUE

5. The Court has subject matter jurisdiction over this action under the IDEA, 20 U.S.C. § 1400, *et seq.*, and 28 U.S.C. § 1331, which confers jurisdiction in cases arising under the Constitution and laws of the United States.

6. The Court has supplemental jurisdiction to adjudicate New York state law claims arising out of the same facts as in the asserted federal claims. 28 U.S.C. § 1367.

7. Venue is proper in the Eastern District of New York pursuant to 28 U.S.C. § 1391(b)(l) as the District has its principal offices in this judicial district.

8. Plaintiffs have exhausted their administrative remedies for all claims that require exhaustion.

## FACTUAL BACKGROUND

9. A.K. is a student with Autism Spectrum Disorder, Obsessive Compulsive Disorder (OCD), Major Depressive Disorder (Moderate), Generalized Anxiety Disorder, Periodic Fever Aphthous Ulcers Pharyngitis Adenitis (PFAPA), Pediatric Autoimmune Neuropsychiatric Syndrome (PANS), and Epilepsy.

10. A.K. is a bright student with at least average intellectual potential who shows strengths in mathematics and benefits from structure and routine in his educational environment.

11. A.K. attended elementary school within the District, where he received Integrated Co-Teaching (ICT) services and related services.

12. As A.K. transitioned to middle school for the 2021-22 school year (sixth grade), he began experiencing significant emotional distress related to his educational program.

13. For the 2021-22 school year, the District recommended that A.K. receive ICT services in all core academic subjects, with individual counseling two times in a 10-day cycle.

14. Throughout the 2020-21 and 2021-22 school year, A.K. experienced increasing anxiety, depression, and social-emotional difficulties related to attending the District's middle school.

15. A.K. experienced emotional breakdowns, frequently crying about having to attend school, and expressing that the school did not understand him. And Parents consistently communicated with the District throughout the 2020-21 and 2021-22 school years, informing them of A.K.'s emotional distress.

16. For example, on January 27, 2021, the school social worker at A.K.'s school acknowledged to A.K.'s mother that he was very resistant to participating in group counseling, and that she had observed "social regression." Two days later she emailed again to note that A.K. had refused to come to the group counseling session. Pulling A.K. from class to attend individual and group counseling sessions exacerbated his anxiety about missing class instruction.

17. On April 12, 2021, A.K.'s mother emailed the District to explain how his social emotional health – especially his reaction to the COVID pandemic – was having a negative impact on his academic performance. She offered a detailed explanation of how his anxiety and depressive disorder were affecting him both academically and socially. She also explained how A.K. struggled with pragmatic language skills – the aspect of language dealing with interpersonal communication (*e.g.*, reading body language, taking turns in conversation, using social cues, etc.). She asked the District specific questions about how it would address these serious concerns.

18. On April 19, 2021, Alex's mother sent a follow-up email, soliciting more information about how the District would address A.K.'s complex profile, especially because he would be moving to the District's middle school for the 2021-22 school year – a source of great anxiety. Given that A.K. would be interacting with far more teachers, she sought clarification for how the

middle school would ensure that all of these teachers would address his unique needs in a consistent and productive manner.

19. On April 20, 2021, the District's Committee on Special Education (CSE) convened and recommended that A.K. continue in the ICT program for the 2021-22 school year.

20. Despite its awareness of A.K.'s emotional struggles, and his mother's repeated efforts to elicit a meaningful plan of action, the District failed to adequately respond to his social-emotional needs or adjust his programming during the 2021-22 school year.

21. As the IHO found, the 2021-22 school year was disastrous for A.K. *See* FOFD at 32-34. He explicitly and implicitly credited Parents' narrative of A.K.'s experience that school year.

22. In late September 2021, a few weeks into the school year, school, A.K. began to experienced severe anxiety and sadness while trying to navigate and negotiate a new, more complicated middle school environment.

23. A.K.'s medical issues worsened during this time, as he experienced seizure activity, sleep disturbances, and flare-ups of his PFAPA and PANS conditions.

24. On October 4, 2021, the school psychologist for the middle school acknowledged in an email to A.K.'s mother that he was struggling and having difficulty expressing his struggles in school.

25. In November 2021, the Parents had A.K. evaluated by Dr. David J. Marks, who conducted a neuropsychological evaluation that recommended "a small therapeutic environment" for A.K.

26. On November 30, 2021, A.K.'s mother emailed the middle school's special education chairperson, school psychologist, and counselor to share that A.K. was inconsolably sad at the

4

middle school. She attached a questionnaire A.K. had completed as part of Dr. Marks's evaluation, in which he responded to pre-printed prompts as follows:

- *My greatest mistake was*… "Going to a terrible school."
- *Sometimes I think that*… "There is no happiness."
- *It hurts when*… "It's not the weekend."
- *My greatest weakness*… "is school (right now)."
- *I only wish that*… "Middle school didn't exist."
- *What I need most is*… "to leave my current school."
- *Three wishes*… "Be tall, leave my current school. Get a happy place."

27. On January 19, 2022, A.K.'s mother told school staff that her was still calling school seven hours of torture.

28. In March 2022, A.K. repeatedly demonstrated signs of emotion decompensation, screaming, engaging in uncharacteristic aggression, and engaging in unusual classroom behaviors in response to his ever building frustration.

29. By April 21, 2022, A.K.'s mother emailed the special education chairperson, school psychologist, and counselor that his emotional state was deteriorating dramatically.

30. On May 25, 2022, the CSE convened again and, despite Parents' request for a small therapeutic placement, recommended A.K. attend 15:1+1 special classes for English and Science, and continue with ICT services for Social Studies and Math for the 2022-23 school year.

31. At the May 25, 2022 CSE meeting, both Dr. Marks and A.K.'s private psychologist, Dr. Jodi Tafarella-Kunz, advocated for a therapeutic school placement for A.K., citing his emotional difficulties and deteriorating mental health.

32. The District insisted it needed to "exhaust the continuum of services in the school building first before they could recommend an alternate placement."

5

33. On August 22, 2022, Parents provided the District with a statutorily required ten-day notice, which notified the District of their intention to place A.K. at Vincent Smith School and to seek tuition reimbursement.

34. Parents unilaterally placed A.K. at Vincent Smith School for the 2022-23 school year after the District failed to offer an appropriate program.

35. At Vincent Smith School, A.K. thrived in a supportive environment with small classes where teachers could address his academic and social/emotional needs.

## PROCEDURAL HISTORY

36. On March 11, 2023, Parents filed a Due Process complaint alleging that the District violated the IDEA and New York law by failing to provide A.K. with a FAPE for the 2021-22 and 2022-23 school years.

37. Impartial Hearing Officer (IHO) Gary Peters, Esq., was appointed to conduct a Due Process hearing.

38. Hearings were held on June 14, 2023, June 16, 2023, July 13, 2023, August 16, 2023, September 14, 2023, October 31, 2023, December 5, 2023, and January 19, 2024.

39. IHO Peters issued his Findings of Fact and Decision (FOFD) on August 1, 2024. ***See* FOFD, attached as Ex. A.** He found that:

- The District failed to provide A.K. a FAPE for the 2021-22 and 2022-23 school years;
- Vincent Smith School was an appropriate unilateral placement; and
- Equitable considerations favored the Parents.

40. The FOFD is organized by presenting, at length, the District's narrative and interpretation of events (FOFD at 9-20), followed by Parents' narrative and interpretation of events. FOFD at 20-29.

41. Although IHO Peters did not include express credibility findings in his FOFD, the decision leaves no doubt that he credited Parents' narrative and interpretation over the District's.

42. He held as follows:

The District failed to provide a FAPE to the student for the 2021-2022 school year as the program recommendation and placement were inappropriate. The District's program caused the student significant emotional distress which continued throughout the school year. The District failed to recognize from the beginning of the school year that the student was having significant emotional distress in the District's program. The District's attempts to provide accommodations in the same placement were ineffective and he continued to suffer throughout the year.

The ICT class setting for the 2021-2022 school year was inappropriate and the class size was too large. The student requires a smaller classroom size so that teachers can address his emotional needs within the class setting. I agree with the Parent that smaller class size would allow the teacher to pay more attention to his emotional needs, to understand him better and to address them within the setting. As a result of not recognizing his emotional needs, the student remained isolated in the class throughout the year.

The ICT class was not able to address the student's academic needs in reading and writing. The record established that the student was struggling in reading comprehension and writing throughout the year. The Woodcock-Johnson IV test indicated that reading comprehension was a relative weakness for A.K. T. 137(06/15), Ex. 13.

The Parent's stated that her son was having difficulties in understanding a book they were reading in class. T. 56(12/05) Despite the fact that her son is bright, he has skill gaps and has not been able to comprehend text. T. 57(12/05). Dr. M-MG testified that the student always had frustration when reading a novel in English. T. 174-175(06/14). JJ testified that reading was a nonpreferred task for the student. 34(06/15).

VS confirmed that many of the tasks that the student was asked to do in ELA were nonpreferred for him. T. 117(06/15). When presented with ELA tasks, he would be reluctant or hesitant to start doing anything that was nonpreferred. T. 117(06/15). For larger assignments, he would require breaking down information in order to be successful. T. 117(06/15). VS testified that writing was nonpreferred for the student. He could answer concrete questions but anything that required more thought, more connections, he needed a lot more help in order to pull those answers to get them completely in writing. T. 117(06/15).

The student['s] struggles in each area throughout the year demonstrate[] that the District's attempts did not result in meaningful progress for him. The academic difficulties also impacted his social/emotional functioning in his classes and resulted in him not wanting to go to school.

7

FOFD at 32-33.

43. He ordered the District to reimburse Parents for A.K.'s tuition at Vincent Smith for the 2022-23 school year.

44. On September 10, 2024, the District filed a Petition for Review to the New York State Review Officer (SRO), challenging the FOFD.

45. On November 20, 2024, SRO Justyn P. Bates issued a decision reversing the FOFD, finding that the District had provided A.K. with a FAPE for both school years. *See* **SRO No. 24-381 (SRO Op.), attached as Ex. B.**

46. The SRO's decision incorrectly assessed the evidence in the record and failed to properly apply the legal standards established in *Endrew F. v. Douglas County School District RE-1*, 580 U.S. 386 (2017).

47. Specifically, SRO Bates ignored IHO Peters' express and implicit findings on the unsupportable basis – inexplicably confined to a footnote – that Peters "did not assess the credibility of the evidence, and rather afforded more weight to certain evidence presented." SRO Op. at 22 n.25.

## LEGAL FRAMEWORK AND STANDARD OF REVIEW

A. **The Individuals with Disabilities Education Act.**

48. The IDEA offers states federal funding in exchange for their agreement to provide students with disabilities a "free appropriate public education" (FAPE).

49. The Supreme Court has explained:

> FAPE, as the [IDEA] defines it, includes 'special education' and 'related services.' 'Special education' is 'specially designed instruction . . . to meet the unique needs of a child with a disability'; 'related services' are the support services 'required to assist a child . . . to benefit from' that instruction. A State covered by the IDEA must provide a disabled child with such special education and related services 'in conformity with the [child's] individualized education program,' or IEP.

8

*Endrew F. v. Douglas Cty. Sch. Dist*. RE-1, 580 U.S. 386, 390-91 (2017).

50. The *Endrew F.* court further explained that an IEP must be tailored to the child's unique needs and requires "careful consideration of the child's individual circumstances."

51. The Court established that an IEP must be "appropriately ambitious." It rejected the then-prevailing standard that an IEP give a child the opportunity to make "merely more than *de minimis*" progress, establishing a "markedly more demanding" standard that requires an educational program to be "reasonably calculated to enable a child to make progress appropriate in light of the child's circumstances."

**B. Review of New York SRO decisions: Federal courts only defer to the SRO for certain categories of analysis.**

52. As noted above, New York has a two-tiered IDEA Due Process system. After an IHO issues an FOFD, an aggrieved party may seek review before an SRO.

53. Then either party aggrieved by the SRO's decision may file an original action for review in state trial court or federal district court.

54. Recently, Judge Engelmayer summarized the standard for district court reviews of SRO decisions that depart from IHO decisions:

> When the decisions of an IHO and an SRO conflict, the Court should generally defer to the SRO's decision as the final decision of the state authorities particularly when the state officer's review has been thorough and careful. But where the district court appropriately concludes that the SRO's determinations are insufficiently reasoned to merit that deference, and in particular where the SRO rejects a more thorough and carefully considered decision of an IHO, it is entirely appropriate for the court, having in its turn found the SRO's conclusions unpersuasive even after appropriate deference is paid, to consider the IHO's analysis, which is also informed by greater educational expertise than that of judges.

*Moonsammy v. Banks*, 23 Civ. 10491 (PAE), 2024 U.S. Dist. LEXIS 173688, at *14-15 (S.D.N.Y. Sept. 23, 2024) (quoting *R.E. v. N.Y.C. Dep't of Educ.*, 694 F.3d 167, 189 (2d Cir. 2012); *M.H. v. N.Y.C. Dep't of Educ.*, 685 F.3d 217, 246 (2d Cir. 2012)) (quotes omitted).

55. A district court must perform an independent judicial review of the SRO's decision and make a decision based on the preponderance of the evidence. *M.H.*, 685 F.3d at 240.

56. The deference courts owe to SRO decisions is circumscribed and varies based on the type of analysis it reviews. Deference to an SRO decision "will hinge on the kinds of considerations that normally determine whether any particular judgment is persuasive." *Id*. at 244.

57. Different aspects of an SRO's analysis merit greater and lesser deference:

- Little deference to the SRO when it interprets objective indications of progress.

- Little deference to the SRO when it challenges the IHO's findings by relying on documents that lack foundation or testimonial corroboration.

- More deference to the SRO when it has greater familiarity with the evidence and witnesses than does the reviewing court.

- More deference to the SRO when it makes decisions about an IEP's educational methodology and substantive adequacy.

- No deference to the SRO when it substitutes its assessments of credibility for those of the IHO.

- No deference to the SRO when it decides whether a district has complied with the IDEA's procedural requirements.

- No deference to the SRO when it fails to grapple with evidence contrary to its findings of fact.

*See, e.g., id.*; *Scott v. N.Y.C. Dep't of Educ.*, 6 F. Supp. 3d 424, 444 (S.D.N.Y. 2014); *K.R. v. N.Y.C. Dep't of Educ.*, 107 F. Supp. 3d 295, 308-09 (S.D.N.Y. 2015); *C.L. v. N. Y. City Dep't of Educ.*, 12 Civ. 1676 (JSR), 2013 U.S. Dist. LEXIS 3474 (S.D.N.Y. Jan. 3, 2013). Importantly here, IHOs' implicit credibility findings are entitled to the same deference as their explicit findings. *See, e.g., NLRB v. Katz's Delicatessen,* 80 F.3d 755, 765 (2d Cir. 1996) ("[I]mplicit credibility resolutions are appropriate where an ALJ's treatment of the evidence is supported by the record as a whole."); *Cty. Sch. Bd. v. Z.P.*, 399 F.3d 298, 306-07 (4th Cir. 2005) ("We have held that credibility determinations implicit in a hearing officer's decision are as entitled to deference under *Doyle* as

explicit findings."); *B.S. v. Waxahachie Indep. Sch. Dist.*, No. 22-10443, 2023 U.S. App. LEXIS 7017, at *18 n.33 (5th Cir. Mar. 23, 2023) ("The hearing officer's reliance on testimony from P.P.'s teachers, as opposed to testimony from P.P., reflects an implicit credibility determination that is owed deference.").

58. During appeals to the SRO, a school district retains the burden to prove that it offered a child FAPE. The SRO may not reverse that burden and require parents to prove that the district's program or placement was inadequate. *B.R. v. N.Y.C. Dep't of Educ.*, 910 F. Supp. 2d 670, 678 (S.D.N.Y. 2012). As discussed below, applying this review framework, the SRO's decision here is entitled to little deference because it was not "grounded in thorough and logical reasoning," and its grounds for reversing the IHO lay in the categories of analysis that do not merit deference.

59. By deciding between the parties' completely opposed factual claims after observing each side's witnesses over many days of hearing, IHO Peters was plainly making credibility findings.

60. The SRO's decision is fundamentally flawed and entitled to little deference because he systematically ignores Peters' – mischaracterizing them as assignments of "weight."

## COUNT I
### Denial of FAPE; Reversal of Erroneous SRO Decision.

61. The SRO's decision was not well reasoned and not deserving of deference.

62. The SRO made incorrect, internally inconsistent findings of fact that contradict the IHO's findings without adequately explaining the basis for his departure from the IHO's findings.

63. The SRO did not properly evaluate the extensive evidence in the record showing A.K.'s emotional distress and deteriorating mental health during the 2021-22 school year, as well as the District's failure to respond adequately to his difficulties.

64. The SRO improperly disregarded the IHO's credibility findings regarding the Parents' testimony about A.K.'s emotional state and struggles at home, effectively abandoning analysis of the whole child.

65. The SRO inappropriately focused almost solely on traditional "academic" domains while minimizing evidence of A.K.'s emotional struggles, which constituted the primary basis – and an entirely proper basis – for the IHO's finding that he was denied a FAPE.

66. The SRO did not properly apply the standard established in *Endrew F.*, which requires that an IEP be "appropriately ambitious in light of [the student's] circumstances."

67. The SRO improperly shifted the burden of proof from the District to the Parents.

68. Parents and A.K. have been denied a FAPE under the IDEA and the New York Education Code.

69. Wherefore, Parents ask that this Court reverse the SRO's decision, which is not well reasoned, and reinstate the IHO's far more detailed and well-reasoned decision.

**COUNT II**
**IDEA**
**Attorney's Fees**

70. Parents incorporate by reference each allegation stated above.

71. Parents prevailed in their due process action, as evidenced by the IHO decision.

72. Parents believe they will prevail in this action for review, in which they request that this Court reverse the SRO's erroneous decision. Parents will therefore be a "prevailing party" under the IDEA. 20 U.S.C. § 1415(i)(3)(B).

73. A prevailing party is entitled to reasonable attorney's fees. 20 U.S.C. § 1415(i).

74. Wherefore, Parents are entitled to reasonable attorney's fees for their Due Process hearing, SRO proceedings, and for this action for administrative review.

75. Parents are further entitled to reasonable fees and costs for additional time expended and costs incurred in seeking attorney's fees in this federal action.

**RELIEF REQUESTED**

WHEREFORE, Plaintiffs respectfully request that this Court:

- Assume jurisdiction of this action.
- Find that the SRO erred when he reversed the IHO's decision.
- Vacate the SRO's decision and reinstate the IHO's decision.
- Find that Parents are a prevailing party under the IDEA.
- Award Parents reasonable attorney's fees, costs, and expenses.
- Award Parents pre- and post-judgment interest.
- Award any other relief this Court deems appropriate.

Dated: March 18, 2025
Plymouth, MA

Respectfully Submitted,

/s/ Benjamin J. Hinerfeld, Esq.
**Law Offices of Benjamin J. Hinerfeld**
9 Stoddard Street
Plymouth, MA 02360
1528 Walnut Street, Suite 1100
Philadelphia, PA 19102
447 Broadway 2nd Floor
New York, NY 10013
Office (508) 591-0385
Cell (215) 694-7432
Fax (215) 689-2423
Ben@hinerfeldlaw.com

Richard F. Corrao, Esq.
**Law Offices of Susan Deedy & Associates**
Attorneys for Plaintiffs
1600 Stewart Avenue, Suite 609
Westbury, NY 11590
Office: (516) 221-8133
Fax: (516) 221-3011
rcorrao@susandeedylaw.com

*Co-Counsel for Plaintiffs*