**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**
________________________________________X

**F.K. and P.K.,** individually, and on behalf of their child, A.K., a minor,

Plaintiffs,

-against-

**Levittown Union Free School District,**
Defendant.
________________________________________X

**Case No. 2:25-cv-1495-JMA-AYS**

Individuals with Disabilities Education Act; N.Y. Educ. Law §4401 *et seq*.

# REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF PLAINTIFFS' MOTION FOR JUDGMENT ON THE ADMINISTRATIVE RECORD

Benjamin J. Hinerfeld
**Law Office of Benjamin J. Hinerfeld**
9 Stoddard Street
Plymouth, MA 02360

1528 Walnut Street, Suite 1100
Philadelphia, PA 19102

447 Broadway 2nd Floor
New York, NY 10013

(508) 591-0385
Ben@hinerfeldlaw.com

Richard F. Corrao
**Law Office of Susan J. Deedy & Associates**
1600 Stewart Avenue, Suite 609
Westbury, New York 11590
(516) 221-8133
Rcorrao@Susandeedylaw.com

## I. INTRODUCTION.

A.K.'s anxiety and depression prevented him from accessing school just as a more obvious physical or academic disability would have. Unfortunately, the SRO minimized A.K.'s disabilities, disregarded his and his parents' lived experience, and held that the District offered him a FAPE because he passed from grade to grade. The District now asks the Court to ratify that decision. But passing from grade to grade is not the IDEA's FAPE standard. CSEs, IHOs, SROs and courts all have to consider the unique needs – academic *and* social-emotional-behavioral – for children like A.K. The have to evaluate him as a whole child.

The District blamed A.K. for being unable to overcome his disabilities on his own. Rather than deny this attitude, the District doubles down on it, repeating the objectively false claim that A.K. exhibited little distress in school. And as explained below, it also chooses not to engage with Parents' main arguments. The Court should grant Parents' Motion for Judgment on the Administrative Record.

## II. ARGUMENT.

### 1. ***Endrew F.* raised the substantive standard for FAPE under the IDEA, which *Rowley* left undefined. The SRO applied the wrong standard.**

In its proposed standard of review, the District gives a long excerpt from the Supreme Court's 2017 *Endrew F.* decision.[1] But it removed four key excerpts that raised the IDEA's substantive standard for FAPE, which the Supreme Court's seminal 1982 *Rowley* decision left undefined.[2]

The first removed excerpt deals with the IDEA's broad purpose and ambitious design:

> The IEP must aim to enable the child to make progress. After all, the essential function of an IEP is to set out a plan for pursuing academic and functional

[1] Dist. Opp. at 7-8.
[2] *Bd. of Educ. of Hendrick Hudson Sch. Dist. v. Rowley*, 458 U.S. 176 (1982)).

> advancement. ***This reflects the broad purpose of the IDEA, an "ambitious" piece of legislation*** enacted "in response to Congress' perception that a majority of handicapped children in the United States 'were either totally excluded from schools or [were] sitting idly in regular classrooms awaiting the time when they were old enough to "drop out."' ***A substantive standard not focused on student progress would do little to remedy the pervasive and tragic academic stagnation that prompted Congress to act.***[3]

The second discusses how the needs and potential of children with disabilities differ dramatically:

> As we observed in *Rowley*, the IDEA "requires participating States to educate a wide spectrum of handicapped children," and "***the benefits obtainable by children at one end of the spectrum will differ dramatically from those obtainable by children at the other end, with infinite variations in between***."[4]

The third discusses how IEPs must be tailored to a particular child:

> This guidance is grounded in the statutory definition of a FAPE. One of the components of a FAPE is "special education," defined as "specially designed instruction . . . to meet the unique needs of a child with a disability." In determining what it means to "meet the unique needs" of a child with a disability, the provisions governing the IEP development process are a natural source of guidance: It is through the IEP that "[t]he 'free appropriate public education' required by the Act is tailored to the unique needs of" a particular child.[5]

The last emphasizes that the IDEA's procedural safeguards are not meaningless:

> The school district protests that these provisions impose only procedural requirements—a checklist of items the IEP must address—not a substantive standard enforceable in court. But the procedures are there for a reason, and their ***focus provides insight into what it means, for purposes of the FAPE definition, to "meet the unique needs" of a child with a disability***.[6]

These omitted excerpts are where the *Endrew F.* court actually did its work: consistent with Congress's "ambitious" legislative vision, it demanded a far more robust and individualized

[3] *Endrew F. v. Douglas Cnty. Sch. Dist. RE-1*, 580 U.S. 386, 399-400 (2017) (citations omitted).
[4] *Id.* at 400 (citation omitted).
[5] *Id*. at 401 (citation omitted).
[6] *Id*. at 401-02.

substantive analysis than *Rowley* previously required. Moreover, the District ends its passage right before the *Endrew F.* Court makes its demand:

> *Rowley* had no need to provide concrete guidance with respect to a child who is not fully integrated in the regular classroom and not able to achieve on grade level. That case concerned a young girl who was progressing smoothly through the regular curriculum. If that is not a reasonable prospect for a child, his IEP need not aim for grade-level advancement. But his educational program must be appropriately ambitious in light of his circumstances, just as advancement from grade to grade is appropriately ambitious for most children in the regular classroom. The goals may differ, but ***every child should have the chance to meet challenging objectives***.
>
> Of course this describes a general standard, not a formula. But whatever else can be said about it, this standard is markedly more demanding than the "merely more than *de minimis*" test applied by the Tenth Circuit. ***It cannot be the case that the Act typically aims for grade-level advancement for children with disabilities who can be educated in the regular classroom, but is satisfied with barely more than de minimis progress for those who cannot***.
>
> When all is said and done, a student offered an educational program providing "merely more than *de minimis*" progress from year to year can hardly be said to have been offered an education at all. For children with disabilities, receiving instruction that aims so low would be tantamount to "sitting idly . . . awaiting the time when they were old enough to 'drop out.'" some internal quotation marks omitted). ***The IDEA demands more. It requires an educational program reasonably calculated to enable a child to make progress appropriate in light of the child's circumstances***.[7]

The omitted excerpts teach that the District had to understand A.K. as a whole child, and not fixate on one educational domain. A child's grade-to-grade advancement cannot come with the price of his emotional collapse. As Parents explained in their opening brief, *Endrew F.* told courts not to stop their analysis because a child has passed from grade to grade.[8] But the SRO did exactly that. He focused on academic achievement almost to the exclusion of A.K.'s minimal social-emotional-behavioral progress. For A.K., a child whose disability manifests more in non-academic than academic domains, *Endrew F.* demands that CSEs, IHOs, SROs and courts correctly identify

---

[7] *Id.* at 402-03 (emphases added).
[8] PLMOL at 4-5.

a child's circumstances and then ensure an appropriately ambitious program aimed at materially bridging the gap between disability-driven deficits and challenging objectives – all so that children with disabilities do not "sit[] idly… awaiting the time when [they are] old enough to drop out."

**2. Parents did not waive arguments about A.K.'s performance in fifth grade when they did not appeal their IHO victory to the SRO.**

The SRO wrote that because Parents did not appeal IHO's Peters' failure to discuss A.K.'s present levels of performance in his April 2021 IEP, he would rely on A.K.'s IEPs "as necessary when discussing the student's then-current needs."[9] He did not expressly state that Parents waived any arguments, so it is unclear what he actually meant. Nevertheless, the District seizes on this language as a finding of waiver: Parents are barred from contesting the SRO's "failure to find that the present levels of performance at the end of the Student's fifth-grade year were not accurate."[10]

The District's argument is wrong legally and moot factually. Courts have repeatedly held that after parents prevail before an IHO, they do not have to appeal to the SRO to challenge rulings that do not aggrieve them.[11] Parents prevailed before IHO Peters on the issue of whether the District offered A.K. a FAPE for 2021-2022. They were not aggrieved by that holding and had no reason or obligation to spend time and resources appealing it.

Factually, Parents make a different point from the SRO and District about the April 2021 CSE's omissions. Parents do note that the SRO ignored A.K.'s academic deficits – specifically in reading comprehension – by selectively citing the record.[12] And of course they can show this Court how the SRO's factual analysis was objectively flawed.

---

[9] SD-10.
[10] Def. Opp. at 3.
[11] *See, e.g., B.Z. v. Hewlett Woodmere Union Free Sch. Dist.*, No. 23-CV-01759 (OEM) (SIL), 2025 WL 339140, at *6 (E.D.N.Y. Jan. 27, 2025) ("[T]he overwhelming authority in this Circuit has found that when an issue is *unaddressed* by the IHO and the party is not aggrieved by the IHO's findings overall, failure to cross-appeal does not constitute a waiver.") (Collecting cases).
[12] PLMOL at 10-11.

But the gist of Parents' argument is that the SRO cherrypicked evidence to find that A.K. was, in effect, doing just fine socially, emotionally and behaviorally.[13] The District cites the same selective examples as the SRO to argue that A.K. made progress socially, emotionally and behaviorally and argues that the SRO ""fully reviewed the testimony and evidence regarding S.K.'s social and emotional functioning."[14] But both the District and SRO disregard months of emails between school staff and Mrs. K documenting his social-emotional and behavioral distress that year.[15] Where, as here, the SRO fails to grapple with evidence contrary to his conclusions, his decision is not thorough, careful, or well-reasoned.[16]

Parents did not waive their right to cite this crucial evidence, which goes to whether the April 2021 CSE properly modified A.K.'s program to address his social-emotional-behavioral needs. IHO Peters' decision found that Mrs. K testified credibly about A.K.'s social-emotional distress. That, in turn, refuted the District's contention that he did not exhibit distress. The Court should reject the District's vague waiver argument.

3. **The District and SRO both dismissed A.K.'s negative feelings as made up. In doing so, both ignored objective evidence, based on District employees' observations, that he was struggling socially, emotionally and behaviorally.**

The District argues that A.K. did not show signs of distress at school, citing testimony of school psychologist Barbara Grady-Monteiro.[17] In doing so, it sidesteps all of Parents' arguments about this non-credible contention.[18] *First,* it ignores the IHO's implicit but clear finding that Mrs. K testified credibly about A.K.'s distress in school.[19] *Second*, it ignores that the IHO affirmatively

---

[13] *Id.* at 7-10.
[14] Dist. Opp. at 5-6.
[15] PLMOL at 7-10.
[16] *Moonsammy v. Banks*, 23 Civ. 10491 (PAE), 2024 WL 4277521, at *6 (S.D.N.Y. Sept. 23, 2024) (quoting *R.E. v. N.Y.C. Dep't of Educ*., 694 F.3d 167, 189 (2d Cir. 2012)) (quotes omitted).
[17] Dist. Opp. at 12.
[18] *See* PLMOL at 14-23.
[19] PLMOL at 16-18.

found that its program caused A.K. "significant emotional distress" throughout 6th grade.[20] *Third*, it continues to cite Julie Joshuakutty's testimony, without addressing Parents' argument that it is entitled to no deference because it was in direct conflict with Mrs. K's credible testimony.[21] *Fourth*, it ignores Parents' reference to Dr. Marks' finding – based in part on troubling questionnaire answers from A.K.'s teachers – that "those around [A.K.] were uniformly aware of what he was enduring emotionally."[22]

Again – the SRO erred by reaching a finding without grappling with overwhelming contrary evidence. Such a decision is not thorough, careful, or well-reasoned.

**III. CONCLUSION.**

**WHEREFORE,** A.K.'s parents respectfully ask the Court to GRANT their Motion for Judgment on the Administrative record.

**Dated**: February 13, 2026

Respectfully submitted,

Richard F. Corrao
**Law Office of Susan J. Deedy & Associates**
1600 Stewart Avenue, Suite 609
Westbury, New York 11590
(516) 221-8133
Rcorrao@Susandeedylaw.com

Benjamin J. Hinerfeld
**Law Office of Benjamin J. Hinerfeld**
9 Stoddard Street
Plymouth, MA 02360
1528 Walnut Street, Suite 1100
Philadelphia, PA 19102
447 Broadway 2nd Floor
New York, NY 10013
(508) 591-0385
Ben@hinerfeldlaw.com

[20] *Id.* at 14-15.
[21] *Id.* at 17.
[22] PLMOL at 22 (citing T271:21-23).