UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
---------------------------------------------------------------------- X

F.K. and P.K., individually, and on behalf of their Child, A.K., a minor,

Plaintiffs,

-against-

LEVITTOWN UNION FREE SCHOOL DISTRICT,

Defendant.

---------------------------------------------------------------------- X

Civil Action No. 2:25-cv-01495 (JMA)(AYS)

**MEMORANDUM OF LAW IN SUPPORT IN OF DEFENDANT'S JUDGMENT ON THE ADMINISTRATIVE RECORD**

**KEANE & BEANE, P.C.**
Attorneys for Defendant
445 HAMILTON AVENUE, 15TH FLOOR
WHITE PLAINS, NEW YORK 10601
(914) 946-4777

# TABLE OF CONTENTS


I. PRELIMINARY STATEMENT ..... 1

II. STATEMENT OF FACTS ..... 2

III. STANDARD OF REVIEW ..... 4

POINT I
THE STANDARD OF DEFERENCE
TO BE APPLIED ..... 4

POINT II
THE ANALYSIS FOR DETERMINING
WHETHER THE PLAINTIFFS ARE ENTITLED
TO REIMBURSEMENT IN THIS PROCEEDING ..... 5

IV. ARGUMENT ..... 6

POINT I
THE SRO CORRECTLY HELD THAT THE
DISTRICT OFFERED A.K. AT FREE AND
APPROPRIATE PUBLIC EDUCATION FOR
THE 2021-2022 SCHOOL YEAR AND
THEREFORE, DEFENDANT'S MOTION FOR
JUDGMENT ON THE RECORD FOR THE 2021-
2022 SCHOOL YEAR SHOULD BE GRANTED ..... 8

POINT II
THE SRO CORRECTLY HELD THAT THE
DISTRICT OFFERED A.K. AT FREE AND
APPROPRIATE PUBLIC EDUCATION FOR
THE 2022-2023 SCHOOL YEAR AND
THEREFORE, DEFENDANT'S MOTION FOR
JUDGMENT ON THE RECORD FOR THE 2022-
2023 SCHOOL YEAR SHOULD BE GRANTED ..... 12

POINT III
THE CSE RECOMMENDED PROGRAMS IN
THE LEAST RESTRICTIVE ENVIRONMENT ..... 17

V. CONCLUSION ..... 18

# TABLE OF AUTHORITIES

Page(s)

Cases

*A.C. ex rel. M.C. v. Board of Educ. of the Chappaqua Cent. Sch. Dist.*,
553 F.3d 165 (2d Cir. 2009) .......... 2

*A.D. v. New York City Dep't of Educ.*,
2013 WL 1155570 (S.D.N.Y. Mar. 19, 2013) .......... 17

*Antonaccio v. Bd. of Educ. of Arlington Cent. Sch. Dist.*,
281 F.Supp.2d 710 (S.D.N.Y. 2003) .......... 2

*B.K. v. New York City Dept. of Educ.*,
12 F.Supp.3d 343 (E.D.N.Y. 2014) .......... 4, 5

*B.O. v. Cold Spring Harbor Cent. Sch. Dist.*,
807 F.Supp.2d 130 (E.D.N.Y. 2011) .......... 2

*Board of Educ. of Hendrick Hudson Cent. Sch. Dist. v. Rowley*,
458 U.S. 176 (1982) .......... 5, 6, 7

*Carlisle Area Sch. v. Scott P.*,
62 F.3d 520 (3d Cir. 1995) .......... 7

*D.D-S. v. Southold Union Free Sch. Dist.*,
2011 WL 3919040 (E.D.N.Y. Sept. 2, 2011) .......... 11

*Endrew F. v. Douglas Cty. Sch. Dist. RE-1*,
580 U.S. 386 (2017) .......... 7, 8, 11

*F.L. v. Bd. of Educ. of Great Neck Union Free Sch. Dist.*,
274 F.Supp.3d 94 (E.D.N.Y. 2017) .......... 5, 6, 14, 15, 16

*Forest Grove Sch. Dist. v. T.A.*,
557 U.S. 230 (2009) .......... 6

*Gagliardo v. Arlington Cent. Sch. Dist.*,
489 F.3d 105 (2d Cir. 2007) .......... 5

*Grim v. Rhinebeck Cent. Sch. Dist.*,
346 F.3d 377, 382 (2d Cir. 2003) .......... 5

*Lillbask ex rel. Mauclaire v. State of Conn. Dept. of Educ.*,
397 F.3d 77 (2d Cir. 2005) ........................................ 2, 4

*M.B. and J.B., on behalf of their child A.B. v. Katonah-Lewisboro Union Free Sch. Dist.*,
2025 WL 2773358 (S.D.N.Y. Sept. 25, 2025) ........................................ 4

*M.W. ex rel. S.W. v. New York City Dep't of Educ.*,
725 F.3d 131 (2d Cir. 2013) ........................................ 8

*Mr. P. v. W. Hartford Bd. of Educ.*,
866 F.3d 735 (2d Cir. 2018) ........................................ 16

*P. v. Newington Bd. of Educ.*,
546 F.3d 111 (2d Cir. 2008) ........................................ 7, 8

*P.K. v. Bedford Cent. Sch. Dist.*,
569 F.Supp.3d 371 (S.D.N.Y. 2008) ........................................ 16

*R.C. ex rel. M.C. v. Byram Hills Sch. Dist.*,
906 F.Supp.2d 256 (S.D.N.Y. 2012) ........................................ 11, 12

*R.E. v. New York City Dept. of Educ.*,
694 F.3d 167 (2d Cir. 2012) ........................................ 5

*S.H. v. Eastchester Union Free Sch. Dist.*,
2011 WL 6108523 (S.D.N.Y. Dec. 8, 2011) ........................................ 11

*T.C. on behalf of I.M. v. William Floyd Union Free Sch. Dist.*,
774 F.Supp.3d 583, 621 (E.D.N.Y. 2025) ........................................ 18

*Tucker v. Bay Shore Union Free Sch. Dist.*,
873 F.2d 563 (2d Cir. 1989) ........................................ 6

*W.A. v. Hendrick Hudson Cent. Sch. Dist.*,
927 F.3d 126 (2d. Cir. 2019) ........................................ 5

*Walczack v. Florida Union Free Sch. Dist.*,
142 F.3d 119 (2d Cir. 1998) ........................................ 5, 6

*Zayas v. Banks*,
2025 WL 1091225 (2d Cir. Apr. 8, 2025) ........................................ 5

Statutes

20 U.S.C. §1412(a)(5)(A) ........................................ 7, 17
20 U.S.C. §1414(d)(1)(A)(i)(IV)(bb) ........................................ 8

20 U.S.C. §§ 1401(d)(1)(A)-(B) .......... 6

Regulations

8 N.Y.C.R.R. 200.6(a)(1) .......... 7, 12
8 NYCRR 200.1(aaa), (eee) .......... 12, 13, 14
34 C.F.R. 300.114(a)(2)(i), 300.116(a)(2) .......... 7

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
---------------------------------------------------------------------- X

F.K. and P.K., individually, and on behalf of their Child, A.K., a minor,

Plaintiffs,

-against-

LEVITTOWN UNION FREE SCHOOL DISTRICT,

Defendant.

---------------------------------------------------------------------- X

Civil Action No. 2:25-cv-01495 (JMA)(AYS)

**MEMORANDUM OF LAW IN DEFENDANT'S MOTION FOR JUDGEMENT ON THE ADMINISTRATIVE RECORD[1]**

## I. PRELIMINARY STATEMENT

This Memorandum of Law is submitted on behalf of Defendant, the Levittown Union Free School District (the "District"), in support of its Motion for Judgment on the Administrative Record upholding the appeal of the November 20, 2024 decision of the New York State Review Officer ("SRO") in Decision Number 24-381 ("SRO Decision"). That decision overturned the August 1, 2024 Decision and Order (the "IHO Decision") of the Impartial Hearing Officer ("IHO"), which found for the Parents. In the SRO Decision, it was determined that "the evidence

[1] The administrative record, as prepared by the Office of State Review, is uploaded for the Court's review. Citations to the Administrative Record will be cited consistent with the Index prepared by the Office of State Review as follows: references to the State Review Officer Decision will be cited as "SD[page number]"; references to the Impartial Hearing Officer Decision will be cited as "I[page number]"; the pleadings submitted to the State Review Officer in the Appeal will be cited as "P[page number]"; the Certifications of the Impartial Hearing Officer Record will be cited as "C[page number]"; supplementary documents submitted to the Impartial Hearing Officer will be cited as "S[page number]"; Parent Exhibits will be cited as "PE[page number of parent exhibit bundle]"; District Exhibits will be cited as "DE[page number of district exhibit bundle]"; and transcript citations will be cited as "T[page number]."

in the hearing record supports finding that the district offered the student a [free and appropriate education] for the 2021-22 and 2022-23 school years…" (SD30).

Where an action is brought under the Individuals with Disabilities Education Act ("IDEA") to appeal a final decision of the SRO, the United States Court of Appeals for the Second Circuit recognizes summary judgment as the procedural mechanism for reviewing such administrative decisions. *B.O. v. Cold Spring Harbor Cent. Sch. Dist.*, 807 F.Supp.2d 130, 134 (E.D.N.Y. 2011), *Antonaccio v. Bd. of Educ. of Arlington Cent. Sch. Dist.,* 281 F.Supp.2d 710 (S.D.N.Y. 2003). A motion for summary judgment is a "pragmatic procedural mechanism" for reviewing a state's compliance with the procedures of the IDEA. *A.C. ex rel. M.C. v. Board of Educ. of the Chappaqua Cent. Sch. Dist.*, 553 F.3d 165, 171 (2d Cir. 2009), *Lillbask ex rel. Mauclaire v. State of Conn. Dept. of Educ.,* 397 F.3d 77 (2d Cir. 2005). The Court has authorized the parties to submit to motion practice in the nature of cross motions by the parties on the seeking an Judgment on the Administrative Record. This memorandum of law is submitted by the District in support of its motion for an Order in its favor, dismissing the Complaint. The District maintains that the preponderance of evidence in the administrative record supports the SRO's decision, and, accordingly, the SRO's decision is entitled to full deference and affirmance by the Court.

## II. STATEMENT OF FACTS

The District respectfully refers the Court to the detailed 31-page, single-spaced, decision of the SRO, supported by references to the administrative record for a full recitation of the facts in this proceeding. (SD1-SD31). To the extent necessary, the Court is also respectfully referred to

the complete administrative record on file with the Court, in order to determine the material facts established by the record.[2]

A.K. is classified as a student with Autism. (DE4). In his fifth-grade year, during the 2020-2021 school year, A.K. was enrolled in an integrated co-teach class ("ICT") and received individual counseling once per week. (DE36; T95-T97). Due to A.K.'s progress within the ICT program and his continued need for the supports available in the ICT setting, the CSE continued to recommend ICT classes for A.K. for sixth grade, during the 2021-2022 school year, with psychological counseling on an individual basis (2x10 day cycle) (DE28; DE32). The Parents continued to receive parent counseling and training on an individual basis fifteen hours for the school year and three hours for the summer of 2021 (D28).

The District's ICT program allows for small group instruction and differentiated instruction that depends on the individual needs of the students (T93-T95). For example, students are broken up into smaller groups within the classroom depending on their reading or other relevant academic performance areas (*Id.*). Students with social-emotional needs can utilize coping strategies and proactive strategies to assist them throughout the school day (*Id.*). The ICT program also includes supports for students' organizational skills (*Id.*).

A.K. continued to make demonstrable, meaningful progress until approximately March 2022, when he began informing District staff that he would be attending another school. At that point in time, he began refusing to attend his IEP-mandated counseling sessions at school (T276-T277). In response, A.K.'s counselor offered him options with respect to the time and location for

[2] The District will fully support each statement of fact within this memorandum of law with an administrative record citation to assist the Court in its review in this proceeding.

his counseling and often pushed into A.K.'s academic support class to provide him with his counseling supports within that classroom (*Id.*).

Based on updated testing, A.K.'s academic performance, his social-emotional needs, other educational data, and teacher and parent input, during a May 25, 2022 CSE meeting, the CSE appropriately recommended a special class, 15:1:1 ratio, for English and science and an ICT class for math and social studies (DE10; DE15). The IEP also provided for individual psychological counseling for A.K. (2x10 day cycle for 42 minutes), small group counseling twice per month, parent counseling and training fifteen hours for the school year and an occupational therapy consultation for District staff five times a year, for 30 minutes each session (*Id.*). The IEP provided for three hours of parent counseling and training over the summer of 2022 (DE4).

The Parents rejected this IEP, however, and unilaterally enrolled A.K. in the Vincent Smith School for the seventh grade. The Parents then filed the Request for Due Process which forms the basis of this proceeding, alleging a denial of FAPE in both the 2021-2022 and 2022-2023 school years. In this proceeding the Parents seek, among other things, reimbursement for the tuition to the Vincent Smith School for the 2022-2023 school year.

## III. STANDARD OF REVIEW

### POINT I
### THE STANDARD OF DEFERENCE TO BE APPLIED

In deciding motions for summary judgment under the IDEA, courts conduct what has been characterized as a modified de novo review. "[S]ummary judgment in IDEA cases is 'in substance an appeal from an administrative determination, not a summary judgment.'" *M.B. and J.B., on behalf of their child A.B. v. Katonah-Lewisboro Union Free Sch. Dist.*, 2025 WL 2773358 (S.D.N.Y. Sept. 25, 2025), *quoting Lillbask*, 397 F.3d at 83 n.3. "However, such a review 'is by no means an invitation to the courts to substitute their own notions of sound educational policy for

those of school authorities which they review.'" *M.B., supra, quoting, Board of Educ. of Hendrick Hudson Cent. Sch. Dist. v. Rowley,* 458 U.S. 176, 206 (1982). Courts have described the type of review as "circumscribed." *B.K. v. New York City Dept. of Educ.,* 12 F.Supp.3d 343, 355 (E.D.N.Y. 2014). *See also, Gagliardo v. Arlington Cent. Sch. Dist.,* 489 F.3d 105, 112-13 (2d Cir. 2007). "Federal courts reviewing administrative decisions [under the IDEA] must give 'due weight' to the administrative proceedings, 'mindful that the judiciary generally lacks the specialized knowledge and experience necessary to resolve persistent and difficult questions of education policy.'" *W.A. v. Hendrick Hudson Cent. Sch. Dist.,* 927 F.3d 126, 143 (2d. Cir. 2019), *quoting, Grim v. Rhinebeck Cent. Sch. Dist.,* 346 F.3d 377, 382 (2d Cir. 2003). *See also, B.K.,* 12 F.Supp.3d at 356.

"Deference is particularly appropriate when the [SRO's] review has been 'thorough and careful.'" *R.E. v. New York City Dept. of Educ.,* 694 F.3d 167, 184 (2d Cir. 2012), *citing, Walczack v. Florida Union Free Sch. Dist.,* 142 F.3d 119, 129 (2d Cir. 1998). "Generally, the district court must 'defer to the final decision of the state authorities, that is, the SRO's decision.' Moreover, where, as here, the IHO and SRO reach different results, 'a court *must* defer to the SRO's decision … unless it concludes that the decision was inadequately reasoned, in which case a better-reasoned IHO opinion may be considered instead.'" *Zayas v. Banks,* 2025 WL 1091225 *3 (2d Cir. Apr. 8, 2025), *citations omitted*, (emphasis in the original).

## <u>POINT II</u>
## THE ANALYSIS FOR DETERMINING WHETHER THE PLAINTIFFS ARE ENTITLED TO REIMBURSEMENT IN THIS PROCEEDING

When a parent seeks reimbursement for an out of district placement under the IDEA, a three-prong test, known as the *Burlington/Carter* test, should be applied by the factfinder. *See, F.L. v. Bd. of Educ. of Great Neck Union Free Sch. Dist.,* 274 F.Supp.3d 94, 115 (E.D.N.Y. 2017).

> Under the first prong of the *Burlington/Carter* test, the educational authority bears the burden of proving that its IEP and recommended placement were adequate and appropriate. In determining whether an IEP is adequate and appropriate under the first prong of the *Burlington/Carter* test, courts follow a two (2)-part analysis. First, the court examines "whether the state has complied with the procedures set forth in the IDEA." Next, the court examines the substantive adequacy of the student's IEP, and whether the IEP was "reasonably calculated to enable the child to receive educational benefits." Under the second prong of the *Burlington/Carter* test, "[t]he parents bear the burden of establishing that the placement they selected was an appropriate one. Under the third prong of the *Burlington/Carter* test, "the Court must determine whether equitable considerations support Plaintiffs' claim for reimbursement."

*Id.* (citations omitted).

## IV. ARGUMENT

The purposes of the IDEA are: (1) to ensure that students with disabilities have available to them a free and appropriate public education ("FAPE") that emphasizes special education and related services designed to meet their unique needs and prepare them for further education, employment, and independent living; and (2) to ensure that the rights of students with disabilities and parents of such students are protected. 20 U.S.C. §§ 1401(d)(1)(A)-(B); *Forest Grove Sch. Dist. v. T.A.*, 557 U.S. 230, 239 (2009); *Rowley*, 458 U.S. at 206-07. A school district offers a student a FAPE "by providing personalized instruction with sufficient support services to permit the child to benefit educationally from that instruction." *Rowley*, 458 U.S. at 203. However, the "IDEA does not itself articulate any specific level of educational benefits that must be provided through an IEP." *Walczak*, 142 F.3d at 130. The statute ensures an "appropriate" education, "not one that provides everything that might be thought desirable by loving parents." *Id.* at 132, *quoting Tucker v. Bay Shore Union Free Sch. Dist.*, 873 F.2d 563, 567 (2d Cir. 1989)(citations omitted).

Additionally, school districts are not required to "maximize" the potential of students with disabilities. *Rowley*, 458 U.S. at 189; *Walczak*, 142 F.3d at 132. Ultimately, the IEP must be "reasonably calculated to enable a child to make progress appropriate in light of the child's circumstances." *Endrew F. v. Douglas Cty. Sch. Dist. RE-1*, 580 U.S. 386, 399 (2017). As the Supreme Court held, "for most children, a FAPE will involve integration in the regular classroom and individualized special education calculated to achieve advancement from grade to grade." *Id.,* at 401.

The IDEA also provides that the FAPE the District is required to offer be in the least restrictive environment ("LRE"). 20 U.S.C. §1412(a)(5)(A); 34 C.F.R. 300.114(a)(2)(i), 300.116(a)(2); 8 N.Y.C.R.R. 200.6(a)(1). A LRE is "one that, to the greatest extent possible, satisfactorily educates disabled children together with children who are not disabled, in the same school the disabled child would attend if the child were not disabled." *Carlisle Area Sch. v. Scott P.*, 62 F.3d 520, 535 (3d Cir. 1995). The "tension between the IDEA's goal of providing an education suited to a student's particular needs and its goal of educating that student with his non-disabled peers as much as circumstances allow" dictates a "case-by-case analysis in reviewing whether both of those goals have been optimally accommodated under particular circumstances." *P. v. Newington Bd. of Educ.,* 546 F.3d 111, 119 (2d Cir. 2008) (internal marks and citations omitted).

The Second Circuit uses a two-pronged test to determine whether a school district has met the LRE mandate. First, the Court inquires whether the student can "be satisfactorily educated in the regular classroom, with the use of supplemental aids and services." *Id.* at 121. To answer that question, the Court considers: "(1) whether the school district has made reasonable efforts to accommodate the child in a regular classroom; (2) the educational benefits available to the child

in a regular class, with appropriate supplementary aids and services, as compared to the benefits provided in a special education class; and (3) the possible negative effects of the inclusion of the child on the education of the other students." *Id*. at 120. If the program in question does recommend the student be placed into a special education class or classes, the Court then considers "whether the school has included the child in school programs with nondisabled children to the maximum extent appropriate." *Id.* at 120, *as cited in M.W. ex rel. S.W. v. New York City Dep't of Educ.*, 725 F.3d 131, 145 (2d Cir. 2013) (internal quotations omitted). The ultimate goal, as the Supreme Court noted, is the development of a program "with an eye toward 'progress in the general education curriculum." *Endrew F.,* 580 U.S. at 401, *citing* 20 U.S.C. §1414(d)(1)(A)(i)(IV)(bb).

## <u>POINT I</u>

### The SRO Correctly Held that the District Offered A.K. at Free and Appropriate Public Education for the 2021-2022 School Year and Therefore, Defendant's Motion for Judgment on the Record for the 2021-2022 School Year Should be Granted

The SRO, in a well-reasoned, fully detailed decision determined that the District recommended a FAPE to the student, A.K., for the 2021-2022 school year. In doing so, the SRO carefully analyzed the IHO decision, which held that the District did not offer A.K. a FAPE for the 2021-2022 school year, and provided an explanation, supported by the administrative record, as to why he reached a different conclusion. As the SRO wrote:

> the hearing record leads me to conclude that the IHO's decision finding that the district denied the student a FAPE for the 2021-22 school year was in error. As discussed, in detail above, the hearing record shows that the student was successful in the school during the 2020-21 and 2021-22 school years, which was in contrast to the parent's view of the student, particularly as to the student exhibiting emotional difficulties when he got home from school. However, the IHO appears to have overlooked the student's in school performance focusing primarily on the parent's view of the student, which

> centered around the student's emotional distress as exhibited in the home setting. Additionally, while the IHO noted that the student had relative weaknesses in the areas of reading comprehension and writing, the IHO appears to have overlooked the student's excellent report card for the 2020-21 school year and his overall quarterly GPA of 92.2, 82.2, 85.0, and 84.8 during the 2021-22 school year.

(SD21-22, relying on DE124-DE127 and DE132-DE133). The District submits, for the reasons set forth herein, that the Court should similarly determine that the SRO's decision was carefully considered and reached in accordance with applicable law and precedent, thereby leading to the conclusion that the SRO's decision should not be disturbed.

The SRO discussed the 2021-2022 school year recommendation of the CSE in thirteen single-spaced pages (SD10-SD24). The SRO determined, contrary to the IHO's conclusion, that A.K.'s meaningful progress in the 5th grade ICT program was crucial support for a finding that an ICT program for the 2021-2022 school year was appropriate. Record evidence supporting A.K.'s academic progress in the 2020-21 school year included A.K. earning scores of 3s ("Meeting Standards") and 4s ("Mastery of the Standards") on his report card in all areas, including English Language Arts, Mathematics, Social Studies and Science (DE132-DE133); that he achieved all of his academic IEP goals, achieved one social/emotional/behavioral IEP goal and progressed gradually on two other social/emotional/behavioral IEP goals (DE134-DE137). Further, District staff testified that A.K. made progress in the fifth grade ICT class, including engaging more in class discussions (T111-T112). As the SRO found, this objective evidence of academic progress, which the CSE had before it at the April 2021 CSE meeting when it developed the program for the 2021-2022 school year, was sufficient to establish that a similar program for the upcoming school year would be appropriate. (SD21-SD22).

The SRO further noted that the CSE considered academic testing scores in the average through very superior range, which demonstrated that A.K. was academically capable of making

progress in a mainstream program. (SD15, relying on D106). Further, the CSE considered assessment scores in reading, writing and math, which also demonstrated academic skills sufficient to work on grade level curricula. (SD16, relying on DE22-DE24). The SRO found that goals were developed collaboratively at the April 2021 CSE meeting and were rightly focused on reading and social and emotional goals. (SD17, relying on T130 and DE28).

The SRO recognized that A.K.'s social and emotional needs were the reasons why he needed special education programs and supports. Accordingly, the SRO examined the record to conclude that the CSE's recommended program and services were sufficient to meet A.K.'s social and emotional needs. In detail, the SRO explained why he did not agree with the Parents' argument that A.K.'s social and emotional needs were such that he could not be successful in the program recommended by the CSE for the 2021-2022 school year. The SRO noted that the CSE had a robust discussion regarding the previously developed functional behavioral assessment ("FBA") and why A.K. no longer exhibited the targeted behaviors at the time of the April 2021 CSE meeting. (SD15, relying on DE111-DE112). The SRO noted the outcomes of the 2019 behavior rating scales, including the differences between the teacher scales and the Parent scales. (SD5, relying on DE99). The SRO acknowledged that the IEP noted that A.K. had difficulty transitioning to school in 2021-2022 after the school break due to COVID-19 and that his conduct in group social skills counseling was difficult. (SD16, relying on DE26-DE27). Further, the SRO noted that the Parents' concerns relating to A.K.'s sensory input needs were discussed at the meeting. (SD16, relying on DE26). The CSE discussed the student's rigidity, low frustration tolerance and inflexibility, consistent with his autism diagnosis, which were addressed throughout the day with classroom modifications and accommodations. (SD17, relying on T132-T134, DE26-DE27).

The SRO correctly determined that the CSE's recommendation as to individual counseling was appropriate. The SRO's determination in this regard is supported by the administrative record, especially through the testimony of the District witnesses who provided evidence that while A.K. was in the fifth grade, he had both group and individual counseling, but he participated more in his individual sessions, and that this was the basis for the CSE's recommendation to have him attend individualized counseling as he transitioned to middle school. (T109-T111; T187-T188). During the April 2021 annual review CSE meeting, the social worker who provided A.K. with group counseling in fifth grade described his participation in group counseling that year as inconsistent and that, when he did participate, he demonstrated a good understanding of emotions and coping skill (DE32). In fifth grade, A.K. benefited more from individual counseling (T103-T106; DE32). The District submits that the SRO's finding that individual counseling was, therefore, substantively appropriate should be sustained as it is a sound educational determination supported by the record.

A balanced review of the record establishes that A.K. progressed with respect to his academics and social-emotional needs while in the ICT program during the 2020-2021 school year and that the 2021-2022 IEP was reasonably calculated to enable A.K. to continue to make progress appropriate in light of his circumstances and that the District was capable of providing that program (*see* DE32-DE34; DE132-DE133; DE134-DE138). *Endrew*, 137 S. Ct. at 1001. The evidence fully supports the SRO's determination that the CSE appropriately continued the recommendation for the ICT program, with individual counseling and parent counseling and training, based upon A.K.'s documented progress within that program. *See, S.H. v. Eastchester Union Free Sch. Dist.*, 2011 WL 6108523, at *10-11 (S.D.N.Y. Dec. 8, 2011) (holding that the CSE's recommendation to continue the student's program where the student previously made

progress was appropriate and that a more restrictive placement was not necessary). *See also, D.D-S. v. Southold Union Free Sch. Dist.,* 2011 WL 3919040 (E.D.N.Y. Sept. 2, 2011), *aff'd* 506 Fed.Appx 80 (2d Cir. 2019), *cert. den.* 574 U.S. 975 (2014); *R.C. ex rel. M.C. v. Byram Hills Sch. Dist.,* 906 F.Supp.2d 256, 273 (S.D.N.Y. 2012) (deference to the SRO's decision that is contrary to the IHO's decision is appropriate where there was no evidence in the record that demonstrated that the student would regress or not make progress in the recommended program on the IEP).

The SRO also correctly determined that the District appropriately did not offer counseling for A.K. during the summer of 2021. A.K. did not require counseling as an extended school year service because the March 2021 CSE did not have evidence that the student experienced substantial regression that would entitle him to that service (T106-T107).[3] *See* 8 NYCRR 200.6(k)(1); 8 NYCRR 200.1(aaa), (eee). Rather, the CSE acknowledged that A.K. would be receiving individual counseling through his private outside therapist over the summer and concluded that school-based individual counseling was not needed to prevent regression with respect to his counseling skills or needs (SD17, relying on T106-T107). The CSE continued parent counseling and training over the summer because that service proved beneficial to the Parent and Student (T135).

## <u>POINT II</u>

### The SRO Correctly Held that the District Offered A.K. at Free and Appropriate Public Education for the 2022-2023 School Year and Therefore, Defendant's Motion for Judgment on the Record for the 2022-2023 School Year Should be Granted

In the Spring of 2022, A.K. was due for his reevaluation. Accordingly, various updated evaluations were completed and considered at the May 25, 2022 reevaluation and annual review

---

[3] The District submits that the CSE that met in May 2022 to develop the 2022-2023 IEP also did not have evidence to establish that A.K. experienced substantial regression in this area.

CSE meeting. District staff reported on A.K.'s reevaluation results (DE15-DE16). For example, a school psychologist reviewed A.K.'s psychological evaluation and classroom observation (DE16; DE79-DE87; T241-T243). She reported that A.K.'s cognitive skills fell within the very superior range (99th percentile); his daily living skills were appropriate; and that he achieved moderately elevated scores on the anxiety, depression and anger scales (DE16). A.K.'s special education teacher reported on his educational evaluation and described that his overall reading, writing and math abilities ranged from average to above average and that his sentence writing fluency was below average (DE16-DE17; DE88-89; T474-T478).

Based on his academic performance, social-emotional needs, education data and teacher and Parent input, the CSE appropriately recommended a special class (15:1:1 ratio) for English and science and an ICT class for math and social studies for the 2022-2023 school year (DE10; DE15; D-43)[4]. The IEP also provided for individual psychological counseling (2x10 day cycle for 42 minutes), small group counseling twice per month, parent counseling and training fifteen hours for the school year and an occupational therapy consultation for District staff, five times a year, for 30 minutes each session (DE10). The IEP provided for three hours of parent counseling and training over the summer of 2022 (DE10).

The CSE recommended the special class setting for English and science because, during the 2021-2022 school year, the District staff observed that the English and science classes at the middle school were sometimes taught at a pace that was too fast for A.K., causing him to become frustrated and/or refuse to complete nonpreferred work (T284-T286). When this occurred, the classroom staff were able to utilize techniques, including prompting, to successfully bring him back to task (*Id.*). The CSE recommended the smaller class size of the 15:1:1 ratio special class

[4] A recording of the May 25, 2022 CSE meeting is contained within D-43 which has been uploaded.

for these subjects to address A.K.'s needs and allow for more support in slowing down the pace of instruction, clarifying directions, prompting and providing breaks when needed (*Id.*).

The SRO's determination that the District recommended a FAPE for the 2022-2023 school year was well-reasoned and relied on competent evidence in the administrative record. The SRO discussed the CSE's recommendation for the programming for the 2022-2023 school year over six single-spaced pages. (SD24-SD30). The SRO noted that the CSE, in developing the IEP for the 2022-2023 school year, reviewed all relevant evaluations and information available, including a private neuropsychological evaluation provided by the Parents to the CSE, a report by A.K.'s private psychologist, District administered psychological and educational evaluations, teacher reports, occupational therapy and counseling reports, and the Parents' own verbal report. (SD25). In fact, the SRO spends significant time in his decision reviewing the discussions at the CSE meeting, as reflected in the record. (*Id.)* The SRO recognized that the CSE provided ample opportunity for the private psychologist to explain the findings and recommendations he made in his evaluation, and the CSE spent time discussing same. (SD25-SD26, relying generally on DE15-DE19 and DE51-DE74). The private therapist was also given the opportunity to provide insight on A.K.'s difficulties with transition and how he reacts to unexpected events, which increased his anxiety. (SD26, relying on DE15-DE19). The cognitive and educational testing that was conducted was discussed at the CSE meeting to assist the Committee in making its recommendation, and the SRO reviewed the pertinent scores on these evaluations in his decision. (SD26-SD27, relying on DE15-DE19). The oral contributions of the Parents, the occupational therapist, the social worker, and teachers at the CSE meeting were reviewed by SRO in determining whether the District recommended a FAPE. (SD27-SD28, relying on DE15-DE19). Clearly, the record supports the SRO's conclusion that the CSE considered multiple reports and evaluations to develop an

appropriate program, including reports and evaluations conducted by private providers. *See, F.L.,* 274 F.Supp.3d at 116-17 (The Court deferred to SRO in its decision to reverse an IHO's determination regarding parental participation at the meeting, finding that even though the CSE chairperson was "curt" and had a "rigid agenda", the CSE members did not appear to have pre-determined their decisions and parents and their representatives "were afforded the opportunity to raise concerns, ask questions, rebut CSE recommendations, and provide input from private evaluators.").

After reviewing all of the information that the CSE had before it to recommend a program for A.K., the SRO reviewed the CSE's process in developing its recommendation. (SD28-SD29, relying on DE15-DE19). The SRO noted the following: that A.K. had made progress in ICT classes from an academic standpoint, but struggled emotionally in such setting; that the Parents expressed concerns with A.K.'s self-confidence; and that A.K. was confident in his math and social studies abilities and was doing well in those subjects, but that science and English were struggles for him, leading to frustration. (SD28, relying on D18). Due to those findings, the SRO credited the CSE's recommendation of ICT classes for math and social studies, with a 15:1+1 special class for English and science as appropriate. (SD28-SD29). The SRO reviewed the fact that the Parents asked the CSE to consider a therapeutic setting, as recommended by A.K.'s private evaluator and therapist, and in response, the CSE discussed the continuum of services (SD29, relying on DE15). The SRO found that the CSE properly determined that, as the data at the meeting showed that A.K. could make progress in the public school setting with supports for his social and emotional needs provided, its recommendation of the hybrid ICT and special class program, with counseling and accommodations and modifications was appropriate. (SD31, relying on DE34).

The SRO was particularly detailed in his discussion of how the CSE took seriously the concerns of the Parents, especially the fact that A.K. exhibited different emotional behaviors in the school setting versus the home setting. However, as the SRO noted, the school personnel's testimony regarding his emotional presentation in school and his academic progress was sufficient reason for the CSE to continue to recommend a public-school setting with special education supports. *See, F.L.,* 274 F.Supp.3d at 118-19. While it is true that the private psychologist recommended a therapeutic support program outside the District's building, as well as other recommendations, the failure to adopt those recommendations is not evidence that the District ignored the evaluations. *See Mr. P. v. W. Hartford Bd. of Educ.,* 866 F.3d 735, 753 (2d Cir. 2018); "The fact that the District staff ultimately disagreed with the opinions of plaintiffs and their outside professionals does not mean that plaintiffs were denied the opportunity to participate in the development of the IEPs, or that the outcomes of the CSE meetings were 'pre-determined.'" *P.K. v. Bedford Cent. Sch. Dist.,* 569 F.Supp.3d 371, 383 (S.D.N.Y. 2008). As the SRO found, rather than ignore the Parents' concerns, the CSE made additional supports available to A.K., including attempting to secure the same support staff for the 2022-2023 school year that he had previously, including notations on the IEP that A.K. should have access to school support staff throughout the school year for times when he became dysregulated, and providing additional passing time between classes to allow him to navigate the hallways in less crowded times. (SD30, relying on DE11 and DE19). The SRO recognized that the Parents did request a class profile for the students in the special classes recommended for A.K. and that the District informed the Parents that such information would be made available at the beginning of the school year. (SD29, relying on DE18).

The SRO demonstrated that he reviewed the evidence presented at the administrative hearing and took into account the evidence in making his ruling. As he wrote:

> While I am sympathetic to the parents' concerns about their son and their experiences in the home regarding his mental health, the evidence in this proceeding shows that the district carried out the requirements of the IDEA related to the disputed issues at the time of the April 2021 and May 2022 IEPs were formulated. The district staff on the April 2021 and May 2022 CSEs were responsive to the parents, and I note that the May 2022 CSE appropriately added services to the student's programming in an attempt to address the parents' concerns, even if those concerns (especially those in the home) could not be eliminated altogether. The parents and the private psychologist may have opinioned that a change in the student's environment to a nonpublic therapeutic was required at the time the IEPs were formulated in order to offer the student a FAPE, but the evidence does not ultimately bear out that conclusion.

(SD30).

## POINT III

### THE CSE RECOMMENDED PROGRAMS IN THE LEAST RESTRICTIVE ENVIRONMENT

The IEPs at issue in this proceeding satisfies the IDEA's requirement that the Student's recommended placement be provided in the least restrictive environment ("LRE"). 20 U.S.C § 1412(a)(5)(A). The CSE appropriately first evaluated whether an in-District program could meet A.K.'s needs and, once that placement was determined, there was no need to review private or other school settings (D-2). *See A.D. v. New York City Dep't of Educ.*, 2013 WL 1155570, at *8 (S.D.N.Y. Mar. 19, 2013) ("Once the CSE determined that [the public school program] would be appropriate for the Student, it had identified the least restrictive environment that could meet the Student's needs and did not need to inquire into more restrictive options such as nonpublic programs.").

Thus, an impartial review of the entire hearing record provides that the District satisfied its burden of proof on Prong One of the *Burlington/Carter* analysis and that, therefore, the SRO's decision should be upheld and the Parents' request for tuition reimbursement denied[5].

## V. CONCLUSION

For the reasons set forth herein, the District respectfully requests that the Court uphold the reasoned decision of the State Review Officer and grant Defendant's Motion for Summary Judgment in its entirety.

Dated: White Plains, New York
December 16, 2025

**KEANE & BEANE, P.C.**

By: *Susan E. Fine*

Susan E. Fine
Attorneys for Defendant
445 Hamilton Avenue, 15th Floor
White Plains, New York 10601
(914) 946-4777

On brief: Stephanie M. Roebuck

---

[5] The SRO correctly determined that as the District met its burden on Prong I of the *Burlington/Carter* test and he therefore did not reach the question of whether Vincent Smith was an appropriate unilateral placement for the 2022-2023 school year or whether the equitable considerations inured to the Parents' favor. (SD31). The District submits the Court should adopt the SRO's determination as to Prong I and similarly should not proceed to the analysis on Prong II and III of the *Burlington/Carter* test. *T.C. on behalf of I.M. v. William Floyd Union Free Sch. Dist.*, 774 F.Supp.3d 583, 621 (E.D.N.Y. 2025).