UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

--------------------------------------------------------------------X

F.K. and P.K., individually, and on behalf of their Child, A.K., a minor,

Plaintiffs,

-against-

LEVITTOWN UNION FREE SCHOOL DISTRICT,

Defendant.

--------------------------------------------------------------------x

Civil Action No. 2:25-cv-01495 (JMA)(AYS)

**DEFENDANT'S MEMORANDUM OF LAW IN REPLY TO PLAINTIFFS' OPPOSITION TO PLAINTIFFS' MOTION FOR JUDGMENT ON THE ADMINISTRATIVE RECORD**

**KEANE & BEANE, P.C.**
Attorneys for Defendant
445 HAMILTON AVENUE, 15TH FLOOR
WHITE PLAINS, NEW YORK 10601
(914) 946-4777

# TABLE OF CONTENTS

I. PRELIMINARY STATEMENT ........ 1

II. ARGUMENT ........ 1

POINT I
DESPITE PLAINTIFFS' CLAIMS, THE STATE REVIEW OFFICER'S DETERMINATION WARRANTS DEFERENCE BY THIS COURT ........ 1

POINT II
THE STATE REVIEW OFFICER CONSIDERED EVIDENCE OF THE STUDENT'S EMOTIONAL PROGRESS IN MAKING THE DETERMINATION THAT THE DISTRICT OFFERED A FREE AND APPRORIATE EDUCATION ........ 5

III. CONCLUSION ........ 8

# TABLE OF AUTHORITIES

Page(s)

Cases

*M.B. v. Katonah-Lewisboro Union Free Sch. Dist.*,
2025 WL 2773358 (Sept. 25, 2025) .......... 4

*M.H. v. New York City Dept. of Educ.*,
685 F.3d 217 (2d Cir. 2012) .......... 2, 4

*R.E. v. New York City Dept. of Educ.*,
694 F.3d 167 (2d Cir. 2012) .......... 2

*T.C. on behalf of I.M. v. William Floyd Union Free Sch. Dist.*,
774 F.Supp.3d 583 (E.D.N.Y. 2025) .......... 2

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------------------- X

F.K. and P.K., individually, and on behalf of their Child, A.K., a minor,

Plaintiffs,

-against-

LEVITTOWN UNION FREE SCHOOL DISTRICT,

Defendant.

-------------------------------------------------------------------- X

Civil Action No. 2:25-cv-01495 (JMA)(AYS)

**DEFENDANT'S MEMORANDUM OF LAW IN REPLY TO PLAINTIFFS' OPPOSITION TO PLAINTIFFS' MOTION FOR JUDGMENT ON THE ADMINISTRATIVE RECORD**

## I. PRELIMINARY STATEMENT

This Memorandum of Law is submitted by Defendant, Levittown Union Free School District, as a reply to Plaintiffs' submissions heretofore submitted in this action. The District respectfully refers the Court to its previous pleadings for its arguments in support of its Motion for Judgment on the Record. In this Memorandum of Law, the District seeks to address two points presented in Plaintiffs' Opposition to Defendant's Motion for Judgment on the Administrative Record.

## II. ARGUMENT

### POINT I

### DESPITE PLAINTIFFS' CLAIMS, THE STATE REVIEW OFFICER'S DETERMINATION WARRANTS DEFERENCE BY THIS COURT

Plaintiffs seek to minimize the thoroughness of the State Review Officer's decision to convince the Court not to defer to the determination in favor of the District. However, a careful

review of current legal precedents surrounding the deference standard leads to the inexorable conclusion that the SRO's decision must be upheld.

This Court had held that "'the standard for reviewing administrative determinations requires a more critical appraisal of the agency determination than clear-error review but nevertheless falls well short of complete *de novo* review.'" *T.C. on behalf of I.M. v. William Floyd Union Free Sch. Dist.,* 774 F.Supp.3d 583, 595 (E.D.N.Y. 2025), *citing, M.H. v. New York City Dept. of Educ.,* 685 F.3d 217, 244 (2d Cir. 2012). Further, the Court was clear that "where the IHO and SRO disagree, the general rule is that courts must defer to the reasoned conclusions of the SRO as the final state administrative determination." *Id.* at 614, *citing, R.E. v. New York City Dept. of Educ.,* 694 F.3d 167, 189 (2d Cir. 2012).

In that case, the Court noted the SRO's detailed review of the subsections of the IEPs in question: the student's present-levels of performance, his annual goals and needs for related services, the alleged interfering behaviors, and the proposed placement recommended by the CSE. *Id.* at 598-602. Next, the Court proceeded to delineate why the SRO's decision is worthy of deference by the Court. Referring back to the standard for a free and appropriate public education under the Individuals With Disabilities in Education Act, the Court found "'[a]n IEP need only be reasonably calculated to provide likely progress, and after review the record, [this Court] conclude[s] that the SRO, [,unlike the IHO,] had ample evidence to find that the IEP met this standard.'" *Id. at 615, citing, R.E., 694* at 195.

In the case at bar, the SRO was similarly detailed in reviewing the IEPs in controversy when reaching the decision that the District's CSE recommended a free and appropriate education for the 2021-2022 and 2022-2023 school years. Commencing on page 14 of the decision, the SRO delineates the evaluations and reports considered by the CSE at the April 21, 2021 CSE meeting.

(SD14). There is a recitation of the CSE's discussion regarding A.K.'s present levels of performance in academic. social and emotional, and management areas. (SD16). The decision addresses the CSE's consideration and development of goals, supported by the prior written notice from the meeting and testimony from Committee members from the impartial hearing. (SD17). Finally, the SRO reviewed the recommendations of the CSE, highlighting both evidentiary documentation and testimony. (SD17-SD18). The SRO then analyzed A.K.'s progress during the 2021-2022 school year, again by reviewing documentary evidence and testimony. (SD18-SD24). This detailed analysis of the development of the 2021-2022 IEP, as well as how A.K. positively responded in the recommended program, is exactly the type of determination that is due deference by this Court.

Similarly, for the 2022-2023 school year, the SRO engaged in a thorough review of the IEP development process. For this meeting, the SRO had the benefit of an audio recording, which he reviewed. (SD25). As set forth in the decision, the SRO considered the fact that re-evaluations were discussed to allow the CSE to delineate A.K.'s present levels of performance, which included a private neuropsychological evaluation. Along with the evaluation reports themselves, the SRO considered the fact that the CSE heard from A.K.'s private therapist. (SD25-SD27). The SRO noted that parental concerns were discussed by the CSE and parental participation was not inhibited. (SD27; SD29-SD30). A.K.'s difficulties with peer interactions and group settings was taken into account by the SRO. (SD28). The SRO reviewed how the CSE came to its recommendation for programming for the 2022-2023 school year and the various accommodations and modifications that were implemented in the IEP. (SD30). Based upon all of this information, the SRO determined that there was a free and appropriate education offered to A.K. for the 2022-

2023 school year. The District maintains that this analysis was detailed and well-reasoned and deserving of deference.

The Southern District of New York recently reviewed the deference standard. *M.B. v. Katonah-Lewisboro Union Free Sch. Dist.,* 2025 WL 2773358 (Sept. 25, 2025). The Court held:

> [t]o merit deference, the IHO's and SRO's decisions must be "thorough and careful." The quality of the decision can be judged on factors such as whether it is "well-reasoned" and "based on substantially greater familiarity with the evidence and the witnesses than the reviewing court." "Additionally, the Second Circuit has instructed courts that deference to an SRO's decision is more appropriate when the substantive adequacy of an IEP, as opposed to the procedural adequacy, is at issue; when the decision involves a dispute over an appropriate educational methodology versus determinations regarding objective indications of progress; and when the district court's decision is based solely on the administrative record that was before the SRO."
>
> Where, as here, the IHO and SRO reach some contrary conclusions, "reviewing courts are not entitled to adopt the conclusions of either state reviewer according to their own policy preferences or views of the evidence; courts must defer to the reasoned conclusions of the SRO as the final state administrative determination." However, if the Court concludes that "the SRO's determinations are insufficiently reasoned to merit ... deference, and in particular where the SRO rejects a more thorough and carefully considered decision of an IHO, it is entirely appropriate for the court, having in its turn found the SRO's conclusions unpersuasive even after appropriate deference is paid, to consider the IHO's analysis."
>
> Therefore, this Court "must defer to the SRO's decision on matters requiring educational expertise unless it concludes that the decision was inadequately reasoned, in which case a better-reasoned IHO opinion may be considered instead."

*Id.* at *10, *citations omitted.*

After setting forth this standard, the Court proceeded to review the parties' arguments and the SRO decision. Similar to Plaintiffs in in the instant case, the Plaintiffs in the *M.H.* case argued

that the SRO "misinterpreted and overstated" the student's progress. The Court determined that progress towards achieving goals, rather than achievement itself, was sufficient to support the SRO's determination of appropriateness of program. *Id.* at 12. The District submits that the SRO's determination that A.K. made progress towards all of his goals over the two years in question is further evidence that the SRO's decision is correct and due and owed deference.

## POINT II

## THE STATE REVIEW OFFICER CONSIDERED EVIDENCE OF THE STUDENT'S EMOTIONAL PROGRESS IN MAKING THE DETERMINATION THAT THE DISTRICT OFFERED A FREE AND APPRORIATE EDUCATION

The Plaintiffs argue that the SRO ignored evidence and testimony in making his determination regarding A.K.'s social and emotional presentation and his needs in this area. This is patently false. The SRO did more than simply shrug off the information provided to the CSE by Plaintiffs with the sentence "[D]espite the frustration the student expressed to the parent at home, documentary evidence shows the student accessed the general education curriculum with the academic and emotional supports provided by the district in accordance with the April 2021 IEP and made meaningful progress." (Plaintiffs' Memorandum of Law in Opposition to Defendant's Motion for Judgment on the Administrative Record at p. 14). Rather, in reaching this conclusion, the SRO noted that Plaintiff informed the CSE that A.K. was "sad" and that he began to believe he "was not a good student anymore" and that he was becoming increasingly down on himself. (SD11). The SRO then examined A.K.'s progress towards his social and emotional goals, such as his ability to identify behavioral triggers, perspective taking, and his impact on others. (SD13). The SRO further examined A.K.'s inconsistency attending counseling sessions and how his attitude towards attendance in these sessions was addressed by the District's clinical staff. (SD14; SD16).

The SRO spent considerable time reviewing A.K.'s social and emotional presentation in school during the 2021-2022 school year. (SD19-20), including how A.K.'s reluctance towards nonpreferred tasks, resulted in additional supports for initiation and completion of those tasks. (SD20). The SRO did recognize that social and emotional difficulties could impact the student in school, as well as home, but determined based upon a thorough review of the administrative record, that A.K.'s social and emotional needs were being addressed in school to allow him to make progress both educationally and emotionally. (SD20-22).

Further, the SRO reviewed the private evaluations submitted to the CSE, which provided assessment results and a recommendation for a more therapeutic setting and a smaller school setting. (SD22). The SRO continued by reviewing the successes A.K. had in the District's programs and schools, despite the concerns raised by the private psychologist, and expressly noted that, in making his recommendation, the private psychologist is not bound by the obligation to recommend a program in the least restrictive environment. (SD23). The SRO properly reasoned that "it was reasonable for the CSE to reject a special class placement for the student based on his academic ability, concerns that a special class placement would be too restrictive for the student, and a view that the student's needs could be addressed through the support of ICT services and related services. Further, district staff responsible for formulating the student's IEP in compliance with the requirements of the IDEA may be afforded some deference over the views of private experts." (SD23).

For the 2022-2023 IEP, the SRO again reviewed private evaluations and the report of the private psychologist for A.K. who was present at the May 2022 CSE meeting, as well as the reports and evaluations prepared by the District, in determining that the IEP recommendation provided a FAPE. (SD25). This review included noting that the private psychologist indicated that A.K. had

a weakness in perspective taking and inferencing, that his emotional needs could result in him becoming overwhelmed by large amounts of content being presented at one time, that A.K. could struggle voicing his frustration and that he could have difficulties "accepting the responsibilities of middle school." (SD25-26). Further, the psychologist provided the CSE with information regarding A.K.'s difficulties with transitions and unexpected situations (SD26). As the SRO properly determined, the CSE took this information into account in developing its recommendations for A.K. For instance, the CSE recommended a small class setting for English and science to allow for the content in his two most difficult subjects to be broken down and taught at a slower pace. (SD28-29). The SRO also noted that there was evidence in the administrative record that demonstrated that A.K. was more comfortable in the middle school setting, and that he was becoming more adept at transitioning from class to class without struggling. Even so, the SRO found that the recommendation of designated support staff for A.K. and providing him with extra passing time between classes, would help address concerns about transitions in his home school. (SD29-SD30).

The SRO thoroughly, and thoughtfully, analyzed the evidence presented at the administrative hearing regarding A.K.'s social and emotional needs and came to the conclusion that the CSE's recommendations to provide programs within the District's schools was appropriate. The CSE determined that A.K. was a capable student academically, but that he required programs and supports to address his emotional needs to access his education in a mainstream building. As the SRO determined, the provision of special classes, counseling, and the various modifications and accommodations during the school day, would allow A.K. to make the progress necessary to advance from grade to grade in a meaningful way. The SRO did not simply look at his academic levels to make this determination, but also fully reviewed how his social and

emotional needs impacted his ability to perform in the educational setting. Accordingly, the SRO's determination warrants deference by this Court.

## III. CONCLUSION

For the reasons set forth within this memorandum of law, as well as the arguments set forth in each of the pleadings submitted to the Court by Defendant, the Levittown Union Free School District respectfully requests that Plaintiffs' Motion for Summary Judgment on the Administrative Record be denied in its entirety and that the Court grant Defendant's Motion for Summary Judgment on the Administrative Record in its entirety.

Dated: White Plains, New York
February 13, 2026

**KEANE & BEANE, P.C.**

By: Susan E. Fine
Susan E. Fine
Attorneys for Defendant
445 Hamilton Avenue, 15th Floor
White Plains, New York 10601
(914) 946-4777